UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF WISCONSIN

---

BOBBIE JO SCHOLZ,

        Plaintiff,

  v.                                    Case No. 19-cv-1074

UNITED STATES OF AMERICA,  and
SECRETARY HEALTH AND HUMAN  SERVICES,

        Defendants.

---

## PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

---

      Plaintiff, through her legal counsel, submits this brief in opposition to Defendant's Federal Rule 12(b)(6) Motion to Dismiss. (ECF 11, ECF 12.) Defendant relies upon res judicata and claims splitting as a basis for their motion to dismiss claims of negligent outpatient mental health treatment and negligent pharmacy oversight. Neither argument applies as the claims set forth in Plaintiff's amended complaint (ECF 10 herein referred to as Scholz II) do not duplicate a lawsuit between the same parties pending in the Milwaukee Division of this Court, Scholz v. United States of America, Case No. 2:16-cv-1052 (herein referred to as "Scholz I). . Plaintiff's current action ("Scholz II") is factually distinct in that it involves different VA treatment facilities, different actors and events, and additional injuries that occurred after the negligent claims in Scholz I. (ECF 10 Scholz II Amended Complaint and Administrative Tort Claims 10-1 and 10-2: Exhibit 1-Scholz I Complaint. Exhibit 2 Scholz I Administrative Tort Claim September 9, 2013, Exhibit 3 Scholz I Administrative Tort Claim March 7, 2015.)

      Defendant's motion mischaracterizes Plaintiff's claims stemming from Defendant's negligent maintenance and disclosure of her treatment records as a misrepresentation claim that is barred under federal rules. Plaintiff's Claim IV is not a misrepresentation claim as it involves

1

the breach of Defendant's duty to maintain and timely provide patient medical records upon request, a cognizable claim under Wisconsin and federal law.

Defendant's prior arguments and unclean hands during the litigation of Scholz I further dooms their motion to dismiss. Defendant failed to provide Plaintiff with complete medical records of her VA treatment when requested in 2013 and this failure continued until 2018, five years after her first request and 2 days before the end of discovery in Scholz I. (Exhibit 4 Tomah VANC records produced on April 5, 2018; Exhibit 5 Zablocki VAMC outpatient records produced on August 1, 2018.)

Defendant's actions delayed Plaintiff's expert review and identification of additional negligent treatment at VA clinics in Appleton, Green Bay and Cleveland, Wisconsin set forth in Scholz II.. (ECF 12-2, Declaration Dr. Amsel October 28, 2018; ECF 12-5 Declaration Dr. Johnson Nov. 6 2018.), Defendant's production of incomplete certified records in response to Plaintiff's pre-suit administrative requests hampered Plaintiff's ability to identify and file claims based on Tomah VAMC treatment and directly led to the dismissal of Plaintiff's Tomah claims on the basis that it was time barred under within Wisconsin's statute of limitations and repose. (ECF 12-6, Scholz I Decision on Summary Judgment ECF 116, pp 16-18, 27-43, 44-45.)

To justify their current motion to dismiss, Defendant abandons their prior litigation strategy. Defendant argues that Plaintiff's Scholz II negligence claims arise from the same core facts as those in Scholz I and that Plaintiff should have amended her complaint to include the new claims. This argument is undermined by Defendant's prior litigation tactics. In Scholz I, Defendant argued that claims not raised in pre-suit administrative tort claims were barred, an argument adopted by the Court. (Exhibit 6, Order Motion to Dismiss Scholz I ). Plaintiff's earlier motion to amend her Complaint as to damages was also rejected by the Court in part because it

2

was "beyond the time limits set forth in the scheduling order", (Exhibit 7, Order Denying Plaintiff's Motion to Amend Complaint in Scholz I.)

Defendant now argues that Scholz II claims for negligent treatment during the years 2011 to 2018 is a duplicate of core operative facts in Plaintiff's prior Scholz I Tomah claim. In Scholz I , Defendant relied upon different core operative facts when it argued that Plaintiff's Tomah Claim was limited to treatment that ended on March 30, 2011 and was time barred by the Wisconsin Statute of limitations and repose. (Exhibit 9 Def. Brief in Support of Summary Judgment; Exhibit 10 Declaration Tomah psychiatrist Dr. Skripka; Exhibit 11 Def. Reply Brief in Support of Summary Judgment.) To secure summary judgment as to Plaintiff's Tomah claim, Defendant also objected to additional expert opinions of Plaintiff's experts as new opinions outside of the scheduling order. (Exhibit 12 Def. Motion to Strike Pl. Expert Declarations). Defendant's arguments were adopted by the trial court. Defendant's Motion to Strike and Summary Judgment motion as to Tomah treatment were granted. (ECF 12-6, pp. 44-45.)

Despite Defendant's earlier representations and hidden evidence, Defendant now argues the opposite and asserts that Plaintiff should have amended her complaint in Scholz I to include all claims arising during the period 2011 to 2018. Having affirmatively represented to the Court as set forth above, Defendant's current motion to dismiss cannot be credited, as "[t]he principle of waiver is designed to prohibit this very type of gamesmanship." Lott v. Levitt, 566 F.3d 564, 568 (7th Cir. 2009).

Judgment on the Tomah claim has not yet been entered as Plaintiff's remaining claims arising from 2012 breast treatment have not yet been tried. ECF 10, ¶ 26.) The remaining claims were scheduled for trial before Judge Scudder on March 23, 2020 but adjourned due to the coronavirus. Settlement mediation was also ordered but has been postponed. In the event no settlement is reached, a new trial date will be scheduled.

3

## FACTUAL BACKGROUND

### Scholz II-Amended Complaint

Scholz II is an action under the Federal Tort Claims Act, (28 U.S.C. Sec. 2671, et. seq. and 28 U.S.C. Sec. 1346(b)(1) for negligence and professional malpractice in connection with medical care provided to Plaintiff by the Department of Veterans Affairs (during the period 2011 to 2018 after her Tomah treatment ended). Plaintiff also alleges in this action that her legal right to bring claims under the tort claims act were denied because the Department of Veterans Affairs negligently failed to provide Plaintiff with true and correct certified copies of her medical records in response to repeated requests (during the period 2013 to 2018). Plaintiff further alleges as a separate claim that the Department of Veterans Affairs misrepresented the legal mandates and time limits for filing suit in Scholz I. (ECF 1, ECF 10 ¶ 1,2.)

As required by law, prior to filing this lawsuit Plaintiff complied with the requirement of 28 U.S.C. Sec. 2675 of the Federal Tort Claims Act by filing administrative tort claims on June 17, 2019 and July 11, 2019. (ECF 10-1; ECF 10-2 .) The Department of Veterans Affairs again advised Plaintiff they had six months to administratively investigate the claims before a federal action could be filed. (ECF 10, ¶ 3.) To avoid another possible unfair application of Wisconsin law instead of the federal tort claims requirements, Plaintiff immediately filed this action and this Court entered an order delaying service until the tort claim was denied or the six-month period expired. (ECF 5, October 30, 2019.)

### Relevant Factual and Legal Allegations

Plaintiff served in the United States army with a tour of duty in Iraq from 2006 to 2008 and received an honorable discharge. (ECF 10, ¶ 13.) Plaintiff 's mental and physical war injuries required treatment by the Department of Veterans Affairs after discharge that included inpatient mental health treatment at the Tomah VAMC in January and March 2011. ( ECF 10, ¶ 14.) After

4

discharge from the Tomah VAMC and continuing until the Fall of 2018, Plaintiff was treated for mental health issues at the Zablocki VAMC outpatient clinics located in Appleton, Green Bay, and Cleveland, Wisconsin. (ECF 10, ¶ 15).

### *Scholz I*-Factual Background & Failure to Produce Medical Record

On September 7, 2013, Plaintiff filed her first tort claim alleging medical negligence in breast treatment and surgery at the Zablocki VAMC in 2012. With this claim, Plaintiff's counsel requested a "true and correct certified copy" of all Plaintiff VA treatment records and notification if any records were withheld. (Exhibit 2; ECF 10, ¶ 16, ECF 10-1) Defendant responded by providing Plaintiff's counsel with certified records from Zablocki VAMC treatment only. Defendant provided no records of Plaintiff's Tomah VAMC mental health treatment, provided incomplete Zablocki VAMC pharmacy records, and did not advise Plaintiff's counsel that these records existed and were withheld. (ECF 10, ¶ 17.)

In early 2015, Plaintiff learned from newscasts of systemic negligent mental health treatment at the Tomah VAMC and the death of veteran Jason Simcakowski who had been treated with the Plaintiff in treatment programs at the Tomah VAMC in 2011. ( ECF 10, ¶ 18.) After hearing the newscasts of the systemic dangerous mental health and medication prescription issues at the Tomah VAMC, Plaintiff notified her counsel in February 2015 that she had been treated at the Tomah VAMC for mental health issues in 2011. ( ECF 10, ¶ 19.)

Plaintiff's counsel filed an amended tort claim on March 9, 2015 alleging negligent mental health treatment from Tomah VAMC providers. With this claim, Plaintiff's counsel again requested a "true and complete certified copy" of Plaintiff's Tomah records and all other VA records that had not been produced. (Exhibit 3; ECF 10, ¶ 20; ECF 10-2.)

Plaintiff's Counsel received her first certified copy of Plaintiff's Tomah VAMC records in April 2015. The certified Tomah records produced by the Defendant were still not complete records. Defendant withheld records and did not notify Plaintiff that specific records including orders, medication records, pharmacy records, consent forms, and other records were not being disclosed. (ECF 10, ¶ 21.)

Plaintiff's September 7, 2013 Zablocki VAMC breast treatment claims and March 9, 2015 Tomah claims were reviewed by Department of Veterans Affairs employees who advised Plaintiff's counsel of the mandated tort claim review procedures and legal mandates and time limits for filing a federal court action. (ECF 10, ¶ 22.) Both tort claims were reviewed and denied in a joint decision dated February 18, 2016. With this denial Plaintiff was advised she had six months to file in federal court. (ECF 10 ¶ 23.)

On August 8, 2016 Plaintiff filed a lawsuit in federal court based upon all claims arising from the 2011-2012 Zablocki VAMC breast surgery and breast treatment and Tomah mental health treatment. (Exhibit 1- Scholz I Complaint; ECF 10, ¶ 24.)

### *Scholz I*-Federal Court Litigation

On May 30, 2019 the trial court granted summary judgment to the Defendant on Plaintiff's Tomah claim on the basis that it was time barred by Wisconsin's statute of limitations and denied Plaintiff's claim for lack of informed consent for Tomah treatment on the basis that this claim had not been presented for administrative review. (ECF 10, ¶ 25.) Plaintiff's Tomah claim has not yet been reduced to judgment as Plaintiff's breast claim remains pending for trial (Scholz. V. U.S. Case No. 16-CV-1052). ECF 10, ¶ 26.)

During the litigation of *Scholz.I*, Defendant provided Plaintiff's counsel with additional records (not included in prior 2015 certified records) from Tomah treatment that included orders,

6

medications, pharmacy records and consent forms, (ECF 10, ¶ 27. Defendant's May 2017 disclosure was still deficient. After Plaintiff filed a motion to compel in March 2018, Defendant finally disclosed additional pharmacy records. On April 5, 2018 Defendant disclosed 165 pages of Tomah VAMC pharmacy records that contained 47 instances of pharmacy warnings issued to Plaintiff's Tomah providers concerning the unsafe medications that were being prescribed to the Plaintiff. (ECF 10, ¶ 28; .Exhibit 4 Tomah records disclosed on April 5, 2018)

Based upon the egregious medication issues at the Tomah VAMC, Tomah pharmacist and whistleblower Noelle Johnson was deposed on May 4, 2018 in Charlestown, N.C. Johnson identified the systemic negligent prescription practices at the Tomah VAMC that resulted in deaths and injuries to veterans. Johnson also reviewed and confirmed that the newly produced Tomah VAMC medication pharmacy records (Exhibit 4) contained explicit warnings that the medications administered to the Plaintiff were unsafe, but that the warnings were overridden, and the medications given to the Plaintiff. Johnson further opined that there were additional Tomah pharmacy records that were not part of the records disclosed to the Plaintiff. (Exhibit 13, Declaration of Tomah VAMC pharmacist Noelle Johnson.) Johnson's testimony as to Tomah negligence was further confirmed by Tomah VAMC employee whistleblower Robin Weeth who filed complaints at the time of Plaintiff's treatment. (Exhibit 14 Declaration of Robin Weeth.).

Plaintiff's experts reviewed the additional evidence and provided timely supplemental and rebuttal reports on May 31, 2018 addressing the dangerous prescription practices at the Tomah VAMC and their relationship to Plaintiff's injuries. (Exhibit 15 Supplemental and Rebuttal Expert Report of Dr. Lawrence Amsel; Exhibit 16 Supplemental and Rebuttal Expert Report of Dr. Jill Johnson.) Plaintiff also supplemented her motion to compel with the new records and evidence obtained from whistleblower Noelle Johnson. (Exhibit 17 Plaintiff's Supplemental Motion to Compel Brief May 29, 2018.)

7

Plaintiff's Motion to Compel included a request for production of all pharmacy medication interaction records and a request for sanctions. Based upon Defendant's notice to the Court that it would produce additional pharmacy medication records, the Court held that Plaintiff's Motion to Compel was "moot" as to the pharmacy medication records issue and denied the remainder of Plaintiff's Motion to Compel. (Exhibit 18 June 7, 2018 Decision p. 13.)

Unknown to the Plaintiff additional records were still being withheld. . During the June 19, 2018 deposition of Plaintiff's outpatient psychiatrist, Plaintiff learned that there were other additional Zablocki VAMC outpatient pharmacy records that had not been disclosed to Plaintiff. Defendant refused to interrupt the deposition to allow this witness to get the records from his office in the next room. ( ECF 10, ¶ 29; Exhibit 19 First Dep. Dr. Dy Tr. p 64 (1-14))

After making another formal request for the additional pharmacy records and subpoena, Dr. Dy appeared for a second deposition on August 1, 2018 and produced additional records covering the period October 2011 to August 2018. (Exhibit 5 Zablocki VA outpatient records; Exhibit 20 Second Dep. Dr Dy Tr. p. 15 (5-20); ECF 10, ¶ 30.) Dr. Dy methodically went through the records and admitted they contained 25 warnings issued in response to prescriptions issued during the period October 2011 to the summer of 2018. Dr. Dy also admitted he did not discuss the warnings with the Plaintiff. (ECF 10, ¶ 31,32; Exh. 20 Tr. pp. 88-141, p. 141(11-17).

Despite the warnings issued by the VAMC pharmacy, dangerous medication combinations were prepared by the VAMC pharmacy and given to the Plaintiff who took them as prescribed. Plaintiff was never informed of the risks and benefits of medications, alternative mental health treatment, and not informed of the pharmacy medication safety warnings. (ECF 10, ¶ 33.34. Plaintiff experienced continuing and worsening mental and physical health symptoms requiring rescue squads and on-going emergency physical and mental health treatment from private health care providers in the Green Bay area on a continuing basis until Plaintiff ceased mental health

8

treatment with the Department of Veterans Affairs in August 2018. (ECF 10, ¶35, 36.)  The Department of Veterans Affairs received notice of Plaintiff's private emergency treatment but took no action to ensure that the records were accessible to providers, reviewed by providers, and incorporated into Plaintiff's on-going psychiatric treatment. (ECF 10, ¶¶ 37,38.)

The new evidence of outpatient negligence produced on August 1, 2018 was reviewed by Plaintiff's experts who identified the additional outpatient mental health and pharmacy negligence. Plaintiff's treatment was seriously compromised by the prescription of unsafe medications and negligent pharmacy monitoring and oversight on a continuing period during the years 2011 to 2018. .( ECF 10-1 Declaration of Dr. Lawrence Amsel; ECF 10-2 Declaration of Dr. Jill Johnson; 12-2 and 12-5.)

### *Scholz II*-Causes of Action

Plaintiff brings six claims in this current action: Count I-  Medical Negligence, ( ECF 10, ¶ 43-46); Count II-Pharmacy and Oversight Negligence ( ECF 10, ¶ 47-51); Count III-Negligent Failure to Obtain Informed Consent  (ECF 10, ¶ 52-56); Count IV-Negligent Failure to Maintain and Release Accurate and Complete Medical Records.( ECF 10, ¶ 57-64);  Count V-Negligent Hiring, Training, Supervision and Retention (ECF 10, ¶ 65-74); Count VI.  Department of Veterans Affairs Misrepresentations as to Tort Claim procedures.  (ECF 10, ¶ 75-81).. Plaintiff sustained distinct injuries  after her Tomah VAMC treatment from each of the alleged negligent claims in Scholz II. ( ECF 10, ¶ 84, ¶ 85,  ¶ 86.) The  Scholz II claims  constitute legal  claims under the laws of the State of Wisconsin. As a result, the Defendant is liable pursuant to 28 U.S. C. 1346(b)(1).  (ECF 10, ¶¶ 87, 88, 89, 90.)

## II. LEGAL STANDARD

## MOTION TO DISMISS LEGAL STANDARD

"A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." Camasta v. Jos. A. Bank Clothiers, Inc., 761 F.3d 732, 736 (7th Cir. 2014); Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim has facial plausibility when the pleaded facts allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. When reviewing a motion to dismiss for failure to state a claim, a court must accept all well-pleaded facts as true and view them in a light most favorable to the plaintiff. Doe v. Village. of Arlington Heights, 782 F.3d 911, 914–15 (7th Cir. 2015).

## Rule 12(d)  RESULT OF PRESENTING MATTERS OUTSIDE THE PLEADINGS

If, on motion under Rule 12(b)6) or 12(c), matters outside the pleadings are presented to and not excluded by the Court, the motion must be treated as one for summary judgment under Rue 56, All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

## LEGAL STANDARD-FEDERAL TORT CLAIMS

Federal lawsuits brought under the Federal Tort Claims Act require the presentation of an administrative tort claim for review by the responsible agency. The United States is liable in tort claims in the same manner and to the same extent as a private individual in the State where the action occurred. (28 U.S.C. Sec. 2671, et. seq. and 28 U.S.C. Sec. 1346(b)(1).

10

## III. ARGUMENT

Having prevented the Plaintiff from access to her complete medical records and timely identification of claims, Defendant now seeks to avoid liability by creating a sham defense based upon res judicata and claims preclusion principles. The elements necessary for application of these principles do not apply. As set forth below, all of Plaintiff's claims in Scholz II are distinct from the claims in *Scholz I* and are valid claims under Wisconsin and federal law. Defendant's egregious actions in failing to provide Plaintiff with complete medical records commencing in 2013 delayed the identification of *Scholz II* claims and warrants sanctions. .

### A.1 Plaintiff's Complaint is Not Barred by Res Judicata and Claim Splitting

Plaintiff's claims in Scholz II are not barred by res judicata and claims splitting. To apply res judicata or claims preclusion it must be shown that Plaintiff's instant action (Scholz II) is a repetitive, duplicative action based on the same operative facts as Scholz I. Montana v. United States, 440 U.S. 147, 153-54 (1979); Horwitz v. Alloy Automotive Co., 992 F. 2d 100, 103 (7th Cir. 1993). Chi. Title Land Tr. Co. v. Potash Corp of Sask. Sales Ltd., 664 F.3d 1075, 1081 (7th Cir. 2011). Like res judicata, the rule against claim splitting prevents repetitive, duplicative actions based on the same operative facts. Shaver v. F.W. Woodworth Co., 840 F.2d 1361, 1365 (7th Cir. 1988).

Comparison of the "operative facts" in Scholz I (Exhibit 1 ¶¶ 13-37) and Scholz II ( ECF 10 ¶¶ 13-42) clearly shows that the two cases have different and distinct operative facts. The operative facts in Scholz I arise from failed breast surgery treatment at the Zablocki VAMC in 2012 that should never have been done because of Plaintiff's impaired mental and physical condition following her mental health treatment at the Tomah VAMC in 2011. In contrast, the operative facts in Scholz II arise from negligent outpatient mental health treatment after Plaintiff's

11

discharge from the Tomah VAMC rendered at the Appleton, Green Bay and Cleveland VA clinics during the years 2011 through the fall of 2018. Scholz II operative facts also include the failure of Department of Veterans Administration staff to provide Plaintiff with complete and accurate certified medical records during the years 2013 through 2018.

Defendant misconstrues the operative facts in the two Scholz cases in an attempt to apply claims splitting as a basis for dismissal. Examination of the rules for claims splitting clearly establishes that the doctrine is not applicable to Scholz II. "Courts will dismiss a second suit pending between the same parties for claim splitting if the second suit would be barred by claim preclusion if it is assumed the first suit reached final judgment." Trading Techs. Int'l, Inc. v. BCG Partners, Inc., No. 10-C-715, 2011 WL 3157304, at *3 (N.D. Ill. July 26, 2011). The purpose of claim preclusion is to prevent parties or their privies from relitigating issues that were or could have been raised in an earlier action. Barr v. Bd. of Trustees of W. Illinois Univ., 796 F.3d 837, 839 (7th Cir. 2015). A suit is deemed duplicative of an earlier action only if: (1) there was a final judgment on the merits in the first-filed action; (2) there was an identity of parties in the two suits; and (3) there is an identity of causes of action. Id.

The elements necessary for application of the principle of claims splitting set forth in Barr are not present. First, there has been no final judgment on the merits in in Scholz I. Judgment will not be entered until trial of the breast treatment claim is completed. Until that time, the trial Judge retains jurisdiction of this claim. Second, there is no identity of the parties. While both Scholz I and Scholz II involve Scholz as Plaintiff and the United States as Defendant, this does not mean there is an identity of the parties. The United States is always the defendant in any federal tort claim case. The negligent actors in Scholz II are not the same negligent actors in Scholz I. Third, there is no identity of causes of action. Scholz I cause of actions are for negligent mental health treatment at the Tomah VAMC and negligent breast surgery at the Zablocki VAMC

12

in 2012. Scholz II includes 6 different cause of actions from Zablocki VAMC outpatient during the years 2011 through 2018. (Compare the claims set forth in Scholz I (Exhibit 1 ¶¶ 13-37) with the six claims set forth set forth in Scholz II ( ECF 10 ¶ 43--86.))

In determining whether there is an identity of claims necessary for claims preclusion courts consider 'whether the claims comprise the same core of operative facts that give rise to a remedy.'" Adams v. City of Indianapolis, 742 F.3d 720, 736 (7th Cir. 2014)(quoting Matrix IV, Inc. v. Am. Nat'l Bank & Trust Co. of Chi., 649 F.3d 539, 547 (7th Cir. 2011)). To meet this identity of claims, the same group of facts must be present in both cases. "Even though one group of facts may give rise to different claims for relief upon different theories of recovery, there remains a single cause of action." Lee v. City of Peoria, 685 F.2d 196, 200 (7th Cir. 2000).

Defendant's analysis fails because of the significant distinctions between Scholz I and Scholz II that include distinct negligent actions by different providers causing different injuries and distinct causes of actions. The cases do not arise from the same core operative events and do not contain the requisite elements necessary for applications of res judicata or claims splitting. This failure dooms the Defendant's motion for dismissal.

### A2. FTCA Pre-suit Administrative Claim Requirements-Additional Claims

Claims splitting is an equitable doctrine with many exceptions. Am Jur 2nd Actions § 99. The exceptions include the following: (e) For reasons of substantive policy in a case involving a continuing or recurrent wrong, the plaintiff is given an option to sue once for the total harm, both past and prospective, or to sue from time to time for the damages incurred to the date of suit, and chooses the later course. Restatement 2nd of Judgments § 26 (1982). Wisconsin has adopted the Restatement 2nd Judgments. (See Bank of Sun Prairie v Marshall Development Co., 2001 WI App 64, 626 N.W. 2d 319, 242 Wis. 2d 355).

Despite the continuing tort exception for claims preclusion, Defendant postulates that Plaintiff should have amended her Scholz I complaint to include the negligence claims in Scholz II. Plaintiff's knowledge of the operative facts and claims set forth in Scholz II was garnered after the completion of discovery and was beyond the time limit for amending the complaint. (Exhibit 8 May 17, 2018 scheduling order; ECF 12-2; ECF 12-5.)

Under the FTCA mandates set forth in 28 USC 1675, Plaintiff could not amend her complaint until she satisfied the pre-suit administrative requirement. Despite the mandates, Defendant argues that "[r]es judicata bars not only those issues which were actually decided in a prior suit, but also all issues which could have been raised in that action." Brzowstowski v. Laidlaw Waste Systems, Inc., 49 F.3d 337, 338 (7th Cir. 1995); Car Carriers, Inc. v. Ford Motor Co., 789 F.2d 589, 593 (7th Cir. 1986)("Once a transaction has caused injury, all claims arising from that transaction must be brought in one suit or be lost.")

Defendant's feigned ignorance of the FTCA administrative requirements is dubious. Defendant invoked the pre-suit tort claim administrative requirement on two occasions during Scholz I to secure dismissal of Plaintiff's claims for negligent hiring, training, supervision and retention and Plaintiff's Tomah informed consent claim. (Exhibit 6 Order Motion to Dismiss pp. 6-11,13; ECF 12-6 Summary Judgment Decision Order pp. 42-43.)

The 7th circuit court of appeals adheres to the requirements that a tort claim is required prior to filing a federal tort claim lawsuit. Failure to properly present a pre-suit administrative claim requires dismissal of an action. Chronis v. U.S. Case No. 17-3093, July 29, 2019. Under the Federal Tort Claims Act, a plaintiff may bring a medical malpractice claim against the United States only after exhausting administrative remedies. 28 U.S.C. §§ 2401(b), 2675. To exhaust administrative remedies, the plaintiff must "have first presented the claim to the appropriate Federal agency," id. § 2675, so that the agency has an opportunity to meaningfully consider and

14

address the claim prior to suit, see Kanar v. United States, 118 F.3d 527, 528 (7th Cir. 1997); Mader v. United States, 654 F. 3d 794, 801 (8th Cir. 2011) (en banc) (explaining that the agency must have "a fair opportunity to meaningfully consider, ascertain, adjust, determine, compromise, deny, or settle FTCA claims prior to suit").    Id.    Under the federal tort claims act a claim has been presented to a federal agency once the plaintiff submits "an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain." 28 C.F.R. § 14.2(a); see also Kanar, 118 F.3d at 528.

The pre-suit administrative claim requirements negate Defendant's current arguments as to claim preclusion. Plaintiff could not file administrative claims until she was actually injured and had notice of the injury and its cause. United States v. Kubrick, 444 US 111 (1979); United States v. Kwai Fun Wong, 135 S. Ct. 1625 (2015). Plaintiff did not have notice of an injury and its cause until she was provided with her outpatient pharmacy records on August 1, 2018 during the second deposition of Dr. Dy and presented this evidence to her experts for review. (Exhibit 5; Exhibit 20 tr. pp 88-141;ECF 12-2, ECF 12-5.)

Plaintiff's new expert reports were filed in response to Defendant's summary judgment. Defendant moved to strike the opinions on the basis they were untimely expert reports under Rule 37c. (Exhibit 12 Def. Motion to Strike Plaintiff's Experts Declarations.) The Court granted Defendant's Motion to Strike ruling that the new opinions were "beyond the time for expert witness disclosures. (ECF 12-6 pp 16-18, 44-45.)

Plaintiff did what was required under the Federal Tort Claims Act to get her new claims reviewed. She filed SF 95 administrative claims with the Department of Veterans Affairs identifying the negligent actions during the years 2011 through August 2018 prior to filing her federal action in Scholz II. (Exhibit 2, Exhibit 3.)

15

### A3.  The Principle of Waiver Bars Defendant's Current Arguments

The principle of waiver prevents Defendant from raising inconsistent arguments.  Review of Defendant's arguments in support of summary judgment aptly demonstrates their violation of this principle.  In *Scholz I* Defendant argued that Plaintiff's Tomah claim was barred under the Wisconsin statute of limitations because the Tomah claim ended in March 2011, more than 5 years before the federal court action was filed. (Exhibit 9 Def. Motion Brief for Summary Judgment; Exhibit 11 pp 2-8 Def. Reply Brief in Support of Summary Judgment.)  To bolster their argument that Plaintiff's Tomah treatment ended on March 30, 2011,  Defendant produced the affidavit of Dr. David Skripka, a Tomah VAMC psychiatrist assigned to oversee Plaintiff's treatment. (Exhibit 10.) Defendant also motioned the Court to strike the new opinions of Plaintiff's experts based on the newly disclosed records. (Exhibit 12.)  The trial court adopted Defendant's arguments on both motions. ((ECF 12-6 pp.16-18, 27-41, 44-45; Scholz I ECF 116.)

Despite Defendant's prior representations,  Defendant now argues the opposite and asserts that Plaintiff should have amended her Scholz I complaint to include all claims occurring during the period 2011 to 2018.   Defendant's current  motion to dismiss arguments cannot be credited, as "[t]he principle of waiver is designed to prohibit this very type of gamesmanship." Lott v. Levitt, 566 F.3d 564, 568 (7th Cir. 2009).

### A4. Defendant's Unclean Hands Dooms their Motion to Dismiss

Under Wisconsin common law, a party is not  entitled to equitable relief unless she has clean hands." S & M Rotogravure Service, Inc. v. Baer, 77 Wis.2d 454, 466, 252 N.W.2d 913, 918-19 (1977) (citing Martinson v. Brooks Equipment Leasing, Inc., 36 Wis.2d 209, 223, 152 N.W.2d 849 (1967)).  For this defense to have merit, a party must demonstrate that "the things from which the plaintiff seeks relief are the fruit of its own wrongful or unlawful course of

conduct." Id. (emphasis added) (citing David Adler & Sons Co. v. Maglio, 200 Wis. 153, 160-61, 228 N.W. 123 (1929)); see also Security Pac. Nat'l Bank v. Ginkowski, 140 Wis. 2d 332, 339, 410 N.W.2d 589, 593 (Ct. App.1987)

"For relief to be denied a plaintiff in equity under the 'clean hands' doctrine, it must be shown that the alleged conduct constituting 'unclean hands' caused the harm from which the plaintiff seeks relief . . . [and] 'it must clearly appear that the things from which the plaintiff seeks relief are the fruit of its own wrongful or unlawful course of conduct.'" Stated another way, the unclean hands defense "only applies when there is a direct nexus between the bad conduct and the activities sought to be enjoined." Shondel v. McDermott, 775 F.2d 859, 869 (7th Cir. 1985) (quoting Int'l Union, Allied Industrial Workers v. Local Union No. 589, 693 F.2d 666, 672 (7th Cir. 1982)).

The doctrine of unclean hands is straightforward. A party cannot seek relief based upon the fruits of its own wrongful conduct. The Seventh Circuit Court of Appeals has also recognized this doctrine. Scheiber v. Dolby Labs., 293 F.3d 1014, 1021 (7th Cir. 2002)).) Although the court opted not to apply the doctrine, the Scheiber court did not hold that this defense could be untethered from controlling Wisconsin common law. The Seventh Circuit Court of Appeals takes a broader and less doctrinaire view of the unclean hands defense, holding that it 'nowadays just means that equitable relief will be refused if it would give the plaintiff a wrongful gain." Id. at 1021.

Defendant is silent on the impact of its negligent failure to provide Plaintiff with records containing evidence of on-going systemic negligent mental health and prescription practices in the treatment rendered to the plaintiff during the years 2011 to 2018. Defendant's failure to reveal the existence of outpatient pharmacy records and warnings until August 1, 2018 (2 days before the end of discovery in Scholz I) negates Defendant's argument that Plaintiff "should have placed all her eggs in one basket" in the Scholz I lawsuit.

17

The legal requirements of unclean hands doctrine under Wisconsin and Seventh Circuit cases turns on whether there is a nexus between defendants' misconduct and the relief it seeks. . That nexus in this case is clear. Defendant's bad acts resulted in two injuries to the Plaintiff. First, Plaintiff was unable to bring her Tomah lawsuit within the Wisconsin statute of limitations causing the loss of her malpractice claims. . Second, Defendant's bad acts resulted in Plaintiff's inability to obtain her own medical records that contained proof of continuing negligent mental health treatment during the years 2011 to 2018. Lacking knowledge of the claims because of Defendant's wrongful acts, Plaintiff's was harmed as she had no basis to include the claims in *Scholz I.*

Defendant seeks a "wrongful gain". In their motion to dismiss Defendant argues that "Plaintiff's anticipated argument that she discovered the facts alleged in Scholz II in the course of discovery in Scholz I does not affect the analysis". Defendant further wrongfully argues that Scholz does not and cannot allege any new injury in Scholz II and is merely trying to recharacterize the same operative facts underlying her claims in Scholz I.

Defendant's arguments are specious. Plaintiff's negligent treatment in Scholz II occurred during a five-year period after her Tomah treatment ended and caused distinct additional injuries attested to by multiple rescue squads and emergency room records. Plaintiff's experts could not include the opinions in their scheduled expert reports as the evidence was not available when the reports were due (November 30, 2017 and May 31, 2018). At the time Plaintiff's expert reports were due in *Scholz I*, Defendant had the records in their possession but withheld them from the Plaintiff. Defendant's prior bad acts caused the *Scholz II* lawsuit it now seeks to dismiss.

## A5. Defendant's Unclean Hands Warrants Sanctions

Defendant postulates that Plaintiff's remedy is limited to sanctions for any discovery or procedural rules while ignoring the negligent pre-suit administrative claim negligence. Complying with Defendant's directive, Plaintiff requests this Court to enter judgment for the Plaintiff as a

18

sanction for Defendant's egregious failure to provide complete medical records after repeated requests commencing in September 2013. Had Plaintiff received all of her records in response to her tort claim requests in 2013 and again in 2015, all claims arising from negligent mental health treatment and negligent pharmacy oversight that plagued Plaintiff's treatment would have been identified and pursued together in one action.

Despite Defendant's unclean hands, Defendant argues that "one bite at the apple is all that the FTCA's claim scheme allows." Román-Cancel v. United States, 613 F.3d 37, 42 (1st Cir 2010). Defendant further argues that permitting Scholz II to proceed "would tolerate or even encourage a strategy by [Scholz] to file lawsuit after lawsuit, throwing pasta at the wall until something sticks" Covington v. National Univ., Case No. 16-C-10661, 2017 WL 4585576, at *3 (N.D. Ill. June 23, 2017).

Plaintiff's repeated "pasta at the wall" is the result of Defendant's actions. Defendant should not be allowed to benefit from its unclean hands. Dismissal of Scholz' current action will only encourage the Defendant to continue its long-standing practice of withholding treatment records from veterans and their legal counsel. Defendant has no excuse for its egregious behavior. Having failed to produce all of Plaintiff's Tomah VAMC and Zablocki VAMC records in response to Plaintiff's 2013 request, Defendant has in fact caused the dilemma it now seeks to dismiss. For these reasons, sanctions are appropriate.

**B.1 Plaintiff's Claim Based Upon Failure to Provide Medical Records is not barred**

Plaintiff's Claim IV arises from Defendant's negligent failure to timely provide complete and accurate treatment records in response to multiple requests during the period 2013 to 2018. The Defendant's breach of its duty to provide complete and accurate medical records deprived Plaintiff of the opportunity to take corrective action to ensure her safety and deprived Plaintiff of

19

her legal right to bring timely administrative tort claims and legal action within the Wisconsin statute of limitations. (ECF 10, ¶ 85.)

Defendant's repeated failure to provide Plaintiff with accurate and complete copies of her medical records occurred in response to pre-suit administrative requests on September 9, 2013 and March 9, 2015. (Exhibits 2 and 3.) The medical records produced during litigation in May 2017 were still incomplete. Defendant first produced copies of Tomah medication pharmacy records on April 5, 2018 and did not produce copies of Zablocki VAMC outpatient pharmacy records until August 1, 2019 (5 years after Plaintiff's 2013 request and 2 days before the end of discovery. (Exhibits 4 and 5; ECF 10, ¶17-21, 27-32, 57-64. 85,88).

Despite Plaintiff's clear identification of this claim as "negligent failure to maintain and release accurate and complete medical records", Defendant mistakenly asserts that Plaintiff's claim IV is a claim of misrepresentation barred under 28 USC 2680(h). In asserting this exemption Defendant incorrectly classifies this claim as one of misrepresentation or deceit. The essence of Plaintiff's Claim IV is clearly not based upon misrepresentation or deceit. This claim is based upon Defendant's breach of its duty to maintain accurate medical records and negligent failure to timely provide Plaintiff with accurate copies of her medical records.

The Department of Veterans Affairs is mandated by law to create and maintain patient treatment records and to release them to veterans upon request. A variety of laws govern the VA's collection, maintenance, use and dissemination of patient medical records 38 USC 5701, 5705, and 7332. The two most important laws incorporated into VA record requirements are the Privacy Act of 1974, 5 USC § 552(a), and the Health Insurance Portability and Accountability Act (hereinafter HIPPA) 1996 Public Law 104-191, 42 USC 1320, 42 CFR 1320. HIPPA mandates the release of patient records within 30 days of request. Under HIPPA, the Department of Veterans Affairs is required to have written procedures governing records and a designated privacy officer

at each of its facilities to educate employees and ensure compliance. The Health and Human Services Office for Civil Rights enforces the act. Violations may result in civil monetary penalties and criminal penalties are enforced by the U.S. Department of Justice.

In addition to HIPPA, Wisconsin provides a cause of action for failure to provide copies of medical records to patients and provides for "actual damages" Sec. 146.83 Wis. Stat. imposes a duty to provide patient medical records in response to patient requests. Under the statute, failure to timely and fully respond to patient records requests is actionable negligence. Patient health care records" means "all records related to the health of a patient prepared by or under the supervision of a health care provider," and had 3 salient facets, for purposes of this case: 1) a patient health care record must be a "record"; 2) the record must have been prepared by or under the supervision of a health care provider; and 3) the record must relate to the patient's health. *Wall v. Pahl,* 2016 WI App 71, 371 Wis. 2d 716, 886 N.W.2d 373, 15-1230.

Wisconsin patients are entitled to actual damages flowing from a health care providers-s failure to timely provide patient medical records upon patient request, Sec. 146.84 Wis. Stats. identifies the damages flowing from patient health care records violations as including Wis. Stats. identifies the damages flowing from patient health care records violations as including "actual damages":

146.84 Violations related to patient health care records.

(1) ACTIONS FOR VIOLATIONS; DAMAGES; INJUNCTION…

(b) Any person, including the state or any political subdivision of the state, who violates s. 146.82 or 146.83 in a manner that is knowing and willful shall be liable to any person injured as a result of the violation for actual damages to that person, exemplary damages of not more than $25,000 and costs and reasonable actual attorney fees.

The majority of states have laws similar to Wisconsin's statute covering patient access to medical records, actions for violations, and damages. HIPPA preempts state law when there is a conflict. Because Wisconsin does not specify a specific time for record release, HIPPA's 30-day time limit applies in this case. (www.healthinfolaw.org/comparative_analysis/individal-access-medicalrecords-50-state-comparison, George Washington University Hirsch Health Law & Policy Program (2013))

Oregon considered a case involving the loss of the right to sue because of the late failure to produce records and held that Plaintiff did have a cause of action for damages, *K. Simpkins v. T.L. O'Connor M.D. et. al*., 210 Or. App. 224, 150 P. 3d 417 (2006). In Simpkins, plaintiff sued a hospital for negligent failure to timely produce all of the medical records until two years after she first requested the records. Plaintiff claimed she was deprived of the ability to bring a medical malpractice action against the defendant because of the statute of limitations. The records the hospital failed to produce were those of a stress test that showed abnormal results. The malpractice claim was that the physician failed to take any action in response to the abnormal reading and Plaintiff's husband later died from a heart attack. Because the records were not timely produced, the statute of limitations for the medical malpractice case expired.

The core issue in Simpkins was whether the hospital owed a duty or had obligations arising from its status or relationships, or from legislations, beyond the standards imposed by common law of negligence in regard to disclosure of medical records. *Simpkins* held that a duty was created by an Oregon statute that stated a "health care provider must disclose a patient's medical records after receiving a written release authorization that directs the health care provide to produce the patient's medical records." Id. After reviewing the statute and its legislative history, the court held the plaintiff had a valid claim and could proceed with her suit based upon loss of her right to

pursue a medical malpractice claim due to Defendant's negligent failure to timely provide complete medical records. *Id,*

Clearly the Department of Veterans Affairs violated its legal duty to produce accurate and complete records upon Plaintiff's request. Like *Simpkins,* this negligence resulted in the extinguishment of Plaintiff's right to pursue her Tomah claim and delayed Plaintiff's ability to identify the claims set forth in Scholz II. The "actual damages" available to the Plaintiff are all damages causally related to her lost Scholz I Tomah claim and all actual damages in Scholz II <u>flowing from</u> the delay in prosecution, increase in litigation costs, and lost damages in the event Plaintiff's Scholz II medical negligence claims are dismissed.

**TORT CLAIM OF SPOILATION SANCTIONS**

Wisconsin courts have not yet ruled on a case alleging loss of the right to bring a malpractice action because of the statute of limitations. Wisconsin has recognized the tort of spoliation of evidence and awarded judgment as a sanction in a medical malpractice action where the Defendant destroyed patient records. *Morrison v. Rankin,* 2007 Wis. App.186, 305 Wis. 2d 240, 738 N.W. 2d 588. In reaching this decision, the court considered whether the Defendant knew or should have known that litigation was a distinct possibility and that the records were necessary for the litigation. An innocent reason for the loss of the records does not prevent sanctions. *Id.* §§ 16,17.

Wisconsin law defines spoliation as the "destruction or withholding of critically probative evidence resulting in prejudice to the opposing party." *Neumann v Neumann,* 2001 WI App 61, ¶79, 242 Wis. 2nd 205, 626 N.W. 2d 821. Plaintiff meets the requirements for application of the tort of spoliation of evidence. Defendant knew litigation was a distinct possibility as the request for records was made at the same time as Plaintiff's administrative claims were filed. (Exhibit 2; Exhibit 3). Defendant also knew that the records were necessary for the litigation and for review

23

by Plaintiff's expert witnesses. (Exhibit 2 Exhibit 3)  Due to whistleblower complaints at the Tomah VAMC facility, Defendant knew of the importance of the pharmacy medication records (Exhibit 4) and its relationship to patient deaths and injuries.  (Exhibit 13, Exhibit 14, Exhibit 15.)

  Defendant's knowledge of the complaints and  pharmacy medication issues at Tomah led to its secret investigation. (Exhibit 1 ¶28-35.) Despite knowledge of the critical pharmacy medication records, Defendant continued to withhold the Tomah records until April 5, 2018 and withheld the Zablocki records until August 1, 2018. (Exhibits 4, 5,  Exh. 19 p 64; Exh. 20 pp 88-141).

Defendant's withholding of critical evidence destroyed Plaintiff's claims in *Scholz I*, subjected Plaintiff to years of additional negligence and injuries, and caused additional litigation and expenses of the *Scholz II* claims. The purpose of forbidding spoliation is two-fold:  1) uphold the judicial system truth-finding function; and 2) deter parties from destroying evidence. *Insurance Co. of N. Am v. Cease Elec. Inc.* 2004 WI App 15, ¶ 16, 269 Wis. Wd 286, 647 N.W. 2d 886.

Having established facts of Defendant's negligent maintenance and withholding of medical records,  Plaintiff has a cognizable claim under the FTCA.  Like Rankin, judgment is the appropriate remedy in this case.

**B2.      Plaintiff's Claim VI Misrepresentation**

Plaintiff's Claim VI is based upon the negligent handling of Plaintiff's administrative tort claims filed on September 9, 2013 and March 7, 2015 (Exhibits 2 and 3). Claim VI arises from Defendant's negligence during its mandated administrative review  as required under  28 U.S.C. § 1346(b; 38 CFR § 14.600 , that preceded her federal litigation.  Department of Veterans Affairs claims staff accepted Plaintiff's claims (Exhibits 2 and 3) but did not access  and review complete records during its review and directed Plaintiff that no suit could be brought while the claims were under administrative review.  Both claims were denied on  February 18, 2016 in a letter advising Plaintiff of her right to file a federal court action within six months.

24

The administrative review was flawed because the certified records produced during the review were incomplete and the stated federal mandates were false. Plaintiff's right to file her Tomah claim in federal court expired while it was being administratively reviewed. Defendant's negligence deprived Plaintiff of her legal right to pursue legal remedies for negligent conduct of Tomah VAMC providers. (ECF 10 ¶ 22-25, 75-83, 86, 89) and prevented the administrative review of medication pharmacy records that were not disclosed until April 5, 2018 and August 1, 2018. (Exhibits 4 and 5).

**WISCONSIN LAW ON MISREPRESENTATION**

Plaintiff has a cognizable claim under Wisconsin law. Under Wisconsin law, the elements of strict liability misrepresentation are: 1) the representation must be of a fact and made by the defendant; 2) the representation of fact must be untrue; 3) the plaintiff must believe such representation to be and true and rely upon to their detriment; 4) the representation must be made on the defendant's personal knowledge or under circumstances in which he or she necessarily ought to have known the truth or untruth of the statement; and 5) defendant must have an economic interest in the transaction. Kalin v. Armstrong, 2002 WI 70, 252 Wis. 2d 676, 643 N,W. 2d 132, fn 23.

Despite meeting the elements for liability under Wisconsin law, Defendant argues that the FTCA exempts from Government liability "any claim arising out of . misrepresentation or deceit[.]" 28 U.S.C. § 2680(h)). The cases cited by the Defendant are not on point as Plaintiff's claim falls outside of the misrepresentation limitations upon which defendant relies. The gravamen of Plaintiff's claim VI is the government's breach of its duty by failing to produce and review all records during the administrative stage and failing to warn Plaintiff of the expiration of her right to file a federal lawsuit while under administrative review.

25

The duty to perform a proper administrative review does not fall under the mandates of the 2680(h) exception.  In Ingham v. Eastern Airlines, Inc., 373 F. 2nd 227 (2d Cir 1967)  the court considered the issue of a misrepresentation exclusion in the setting of a duty to warn. The court found that an aircraft controller had a duty to provide information and warnings.  Although the United States argued that misrepresentation exception applied, the Court held otherwise stating that where the gravamen of the complaint is the negligent performance of operational tasks, rather than misrepresentation, the government may not rely upon Section 2680(h) to absolve itself of liability.  Id. at 239.

Plaintiff's claim VI is a cognizable claim under Wisconsin law  and meets the FTCA requirement under 28 U.S.C. § 1346(b).  .

## C. The Secretary of Health and Human Services ("HHS") is a Proper Party

Plaintiff alleges in this lawsuit, that during the years 2011 to 2018, Defendant's negligence caused the need for rescue squads and treatment at multiple hospital emergency rooms in  Green Bay on an on-going basis. As a result of this negligence, HHS paid for  some of the private medical treatment that Plaintiff incurred for treatment in Green Bay. Plaintiff is now being treated for her mental health issues by private health providers and HHS continues to be billed for treatment.  .

Defendant mistakenly argues that the  United States is the only proper defendant in an FTCA suit and cites *Smith v. United States*, 678 Fed. Appx. 403, 406 (7th Cir. 2017). Defendant failed to advise the Court that *Smith* is an unpublished opinion  Furthermore,  *Smith* is not appropriate as it involved a case where the Plaintiff named the negligent agency instead of the United States as the defendant. HHS is not being named as an alleged negligent party in this action. HHS is a proper party because of their statutory lien.

26

Defendant further argues that Scholz has failed to identify any waiver of sovereign immunity that authorizes her request for a judicial "determination of Medicare subrogation rights". Defendant failed to read the amended complaint that sets forth Medicare's lien right pursuant to 42 USC Sec. 1395y(b)(2). Plaintiff's complaint identified the following:

"8. Defendant Secretary of Health and Human Services has oversight responsibility for the Health Care Financing Administration, the agency responsible for administering the federal Medicare program. Upon information and belief, the Medicare program paid health claims on behalf of the plaintiff for medical services rendered as a result of the medical negligence which is the subject of this case. Pursuant to 42 US Sec. 1395y(b)(2, Medicare may be entitled to reimbursement for related paid claims if plaintiff recovers through settlement or judgment. " (ECF 10, ¶ 8)

Defendant's final argument that the Secretary of Health and Human Services ("HHS") is not a proper party in this action fails. Under federal law, the Department of Health and Human Services has a statutory right to reimbursement for all private medical treatment bills it paid as a result of Defendant's negligence. Medicare paid some of Plaintiff's earlier private treatment during the years 2011 to 2013 caused by the negligence alleged in Scholz I. HHS notified Plaintiff of their statutory lien in Scholz I flowing from $29,000 in private treatment rendered in the Green Bay area during the years 2011 to 2013. (Exhibit 21,). ]Like the lien in Scholz I, HHS has a statutory right to be reimbursed for any medical bills paid for treatment needed because of Defendant's negligence in Scholz II. Upon proof of these payments, the right to reimbursement is established. For these reasons, HHS is a proper party to this action.

## IV. CONCLUSION

For the foregoing reasons, the Plaintiff respectfully requests this Court to deny Defendant's Motion to Dismiss and to grant Plaintiff summary judgment.

Dated this 19th day of April 2020

s/ Mary L. Woehrer J.D.
Woehrer Law Office
9801 Eschweiler Dr. # 301
Wauwatosa, WI. 53226
414 774 2756
Cell Phone: 414 218 8647
Mwoehrer@sbcglobal.net